UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYMAN ADEEB,<br>Plaintiff,<br>v.<br>CITY OF MARINA, et al.,<br>Defendants. | Case No. 25-cv-04062-PCP<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 35 |

In his second amended complaint, Dkt. No. 33, plaintiff Dr. Ayman Adeeb alleges that defendants the City of Marina and certain Marina officials retaliated and discriminated against him for filing public records requests and on the basis of his race in violation of federal and state law. The Court dismissed Adeeb's first amended complaint for failure to state a claim. *See Adeeb v. City of Marina*, 827 F. Supp. 3d 1197 (N.D. Cal. 2026). Defendants now move to dismiss Adeeb's second amended complaint for the same reason. For the reasons set forth herein, the defendants' motion is granted in part and denied in part.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint does not, the defendant may move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Where a plaintiff proceeds pro se, the Court "must construe the pleadings liberally and must afford the plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).

Materials outside the complaint can be considered on a Rule 12(b)(6) motion if they are incorporated by reference therein or otherwise judicially noticeable. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A [district] court may [ ] consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."). The Court may consider documents which are "not physically attached to the complaint" "if the [ ] 'authenticity ... is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)). Federal Rule of Evidence 201 permits judicial notice of "a fact that is not subject to reasonable dispute" because it is "generally known."

## ANALYSIS

In his second amended complaint, Adeeb alleges eleven causes of action:[1]

- First Amendment retaliation (Count 1 against Marina, Huntley, Edwards, Vega, and Nava)
- Violation of his procedural due process rights (Count 2 against Marina, Huntley, Edwards, Vega, and Nava)
- Violation of his equal protection rights (Count 3 against Marina, Huntley, Edwards, Vega, and Nava)
- Violation of the California Public Records Act (Count 4 against Marina)
- Excessive fines and takings (Count 5 against Marina, Huntley, Edwards, Vega, and Nava)
- Civil conspiracy to interfere with his federal civil rights (Count 6 against Huntley, Edwards, Vega, and Nava)
- Discrimination in violation of the federal Fair Housing Act (Count 7 against Marina, Marina Code Enforcement Division, Edwards, and Nava)
- Violation of California's Bane Act (Count 8 against Marina, Huntley, Edwards, Vega, and Nava)
- Violation of California's Unruh Civil Rights Act (Count 9 against Marina)
- Intentional infliction of emotional distress in violation of state law (Count 10 against Marina, Huntley, Edwards, Vega, and Nava)
- Violation of California's Unfair Competition Law (Count 11 against Marina and unnamed individual defendants)

In his amended complaint, Adeeb again alleges that he was discriminated against by defendants in their enforcement of municipal building codes. Adeeb's amended complaint is identical to the original in most respects. *See Adeeb*, 827 F. Supp. 3d 1197. Relevant new allegations include that his records request asked for enforcement information about his own properties as well as a neighboring property whose owners, he asserts "are white, unlike myself, a

---

[1] The Court's previous order provides extensive background on the facts and history of this case. *See Adeeb v. City of Marina*, 827 F. Supp. 3d 1197, 1204 (N.D. Cal. 2026).

Middle Eastern professional," and yet were not penalized. Adeeb also adds an allegation that City employees declined to accept his permit paperwork and closed the receiving counter when he tried to submit forms in February 2025.[2]

Defendants move to dismiss Adeeb's claims on various grounds, which the Court addresses in turn.

## I. Federal Claims

### A. First Amendment – Retaliation (Count 1)

To plead a First Amendment retaliation claim, Adeeb must plead that: "(1) he was 'engaged in a constitutionally protected activity'; (2) the [state] officer's actions 'would chill a person of ordinary firmness from continuing to engage in the protected activity'; and (3) 'the protected activity was a substantial or motivating factor' in the [state] officer's conduct." *Cheairs v. City of Seattle*, 145 F.4th 1233, 1246 (9th Cir. 2025) (quoting *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020)). "At the pleading stage, a plaintiff adequately asserts First Amendment retaliation if the complaint alleges plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct." *Ariz. Students' Assoc. v. Ariz. Bd. of Regents*, 824 F.3d 858, 870–71 (9th Cir. 2016) ("[T]he Board's allegedly retaliatory conduct was temporally proximate to ASA's exercise of its free-speech rights.").

As with Adeeb's earlier complaint, Adeeb has not plausibly pleaded that defendants violated his First Amendment rights. Adeeb alleges that he filed his CPRA request on January 24, 2025, and that defendants issued citations and orders against his properties "literally within hours of … [his] preparing his CPRA Request." But the first citation against his 470 Reservation Road property and $52,500 fine were issued a day or two *before* Adeeb filed his request. Indeed, Adeeb acknowledges that the City could have been preparing his citation before he filed his CPRA request on January 24, 2025.

In addition to this pre-request citation, Adeeb premises his retaliation claim on an "Unsafe

[2] Adeeb cites Exhibit F in support, but Exhibit F does not show that City officials refused to accept his permit request at all and, aside from event summaries of unclear provenance, appears to consist almost entirely of emails sent before the alleged closure of the permit counter in February 2025.

United States District Court
Northern District of California

to Occupy" notice that he received regarding his 327 Reservation Road property on January 27, 2025. But none of Adeeb's new allegations undermine the Court's previous conclusion that Adeeb has not plausibly pleaded that defendants were motivated to retaliate against Adeeb for his protected activity. Defendants point out that the City "had a legitimate and compelling reason to issue the notices of violation in question" and that Adeeb's own complaint and attached exhibits "show a pattern of four years of communications with [Adeeb] regarding his property, informing him of the defects, providing a chance to cure, and issuing citations even when [Adeeb] failed to do so." Adeeb has not plausibly pleaded First Amendment retaliation simply because one citation in the midst of a multiyear process of addressing concerns with his properties was issued after he submitted his CPRA request.

**B. Procedural Due Process (Count 2)**

Adeeb alleges that defendants violated his right to procedural due process under the Fifth and Fourteenth Amendments to the U.S. Constitution. In relevant part, the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A claim that a state actor violated one's procedural due process rights requires "(1) a protected property interest; (2) a deprivation of that interest by state action; and (3) inadequate process for the deprivation." *Garza v. Woods*, 150 F.4th 1118, 1127 (9th Cir. 2025). "As a general matter, in determining what process is due, courts must balance the public and private interests involved." *Id.* at 1129–30 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Procedural due process requires, "at a minimum … that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

Here, as with his previous complaint, Adeeb fails to plead that he was deprived of notice and an opportunity to be heard. His own exhibits indicate that he received notice as to the 327 Reservation Road property, Dkt. No. 33-2, Exh. C, the 235 Reindollar property, Dkt. No. 33-2, Exh. D, and the 470 Reservation Road property, Dkt. No. 33-2, Exh. E. And Adeeb had the opportunity to contest the City's conclusions through the City's administrative appeals procedure. *See* Marina Municipal Code 8.70.100.

Adeeb nonetheless argues that his right to procedural due process was violated because he sought to appeal his citations but was unable to obtain a prompt hearing. According to defendants' declaration, Adeeb sought to appeal the order to abate for 327 Reservation Road on February 25, 2025; the City did not appoint a quorum of members to the Building Board of Appeals until January 2026; and the City scheduled an appeal for Adeeb for March 5, 2026. Dkt. No. 35-1, Declaration of Daniel Paolini ¶¶ 5–10. Thus, the City concedes that Adeeb received a hearing on the City's nuisance order more than one year after the order was issued.

The right to use one's property is protected by the procedural due process guarantees of the Bill of Rights. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." *FDIC v. Mallen*, 486 U.S. 230, 240 (1988). The postponement of a hearing on Adeeb's appeal of the City's notice on his 327 Reservation Road property is supported by the government's interest in regulating property for, among other policies, public safety and welfare.

Adeeb still has a procedural due process right to a "sufficiently prompt post-deprivation hearing." *Id.* at 241. "In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine [1] the importance of the private interest and the harm to this interest occasioned by delay; [2] the justification offered by the Government for delay and its relation to the underlying governmental interest; and [3] the likelihood that the interim decision may have been mistaken." *Id.* at 242.

First, Adeeb alleges that he was "forced to shut down occupied rental units at 327 Reservation Road immediately upon the City's unilateral 'Unsafe to Occupy,' order" resulting in him "los[ing] the use of those units and the rental income from them for an extended period – a significant deprivation of property." Thus, Adeeb alleges that he was deprived of the use of his property for over a year without process resulting in him significant financial losses. Thus, the first factor favors Adeeb.

Second, Adeeb cannot be blamed for the delay in obtaining a hearing on the notice because, as the City concedes, Adeeb was unable to receive a post-deprivation hearing solely due to the City's failure to maintain a quorum of members of the Building Board of Appeals for approximately one year after Adeeb's request. While many "[a]dministrative and judicial proceedings" may "take place after considerably more time has elapsed," *City of Los Angeles v. David*, 538 U.S. 715, 718 (2003), the second factor still favors Adeeb because he "cannot be blamed for this delay," *United States v. Antoine*, 906 F.2d 1379, 1382 (9th Cir. 1990).

Finally, the likelihood that the initial Notice of Violation "may have been mistaken" favors the City. The Marina Fire Department issued its Notice of Violation to Adeeb and Mansour Manal on January 27, 2025, explaining that the department "became aware of non-compliant conditions" including that "several buildings are being occupied prior to a life safety inspection from the fire department and without obtaining a Certificate of Occupancy from the Chief Building Official." Dkt. No. 33-2, Exh. 6, at *242. Because the Marina Fire Department's issuance of its notice is purportedly based on absence of an inspection and a certificate, identifying such an absence carries a low likelihood of error. Therefore, the likelihood that the City of Marina "may have been mistaken" about the absence of an inspection and a certificate, without allegations of misrepresentation or fraud, favors the City of Marina. *Mallen*, 486 U.S. at 242.

In short, two of the relevant factors favor Adeeb and one favors the City. The ultimate determination of how long Adeeb's appeal could be postponed consistent with constitutional due process will depend on a careful weighing of these factors based on the actual facts developed in discovery. For purposes of the City's motion to dismiss, the Court concludes that Adeeb has at least stated a plausible claim for a violation of his right to procedural due process arising from the year-long delay in hearing his appeal.

Adeeb has not, however, stated a claim based on the City's requirement that he pay his levied fines before his appeal hearing. While a state cannot prevent indigent parties from pursuing appeals, *see Boddie v. Connecticut*, 401 U.S. 371 (1971), Adeeb has not pleaded indigence here. *See* Reply at 6. Procedural due process generally does not require that penalties assessed for a non-indigent party be held in abeyance pending appeal. *See McKesson Corp. v. Div. of Alcoholic*

*Beverages & Tobacco*, 496 U.S. 18, 22 (1990) ("[I]f a State penalizes taxpayers for failure to remit their taxes in timely fashion, thus requiring them to pay first and obtain review of the tax's validity later in a refund action, the Due Process Clause requires the State to afford taxpayers a meaningful opportunity to secure *postpayment* relief for taxes already paid pursuant to a tax scheme ultimately found unconstitutional.") (emphasis added); *see also* Fed. R. Civ. Proc. 62(a) (permitting execution of judgment 30 days after entry absent further court order or posting of bond or other security).

**C. Equal Protection (Count 3)**

The Equal Protection Clause of the Fourteenth Amendment prohibits the government from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A plaintiff suing for a violation of their right to equal protection "must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1022 (9th Cir. 2020). A plaintiff bringing an equal protection cause of action can allege that they were in a protected class or a "class of one" meaning that they were "irrationally singled out." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1122–23 (9th Cir. 2022).

Adeeb first alleges that he was discriminated against because of his Middle Eastern ancestry. Adeeb alleges that a nearby property, 474 Reservation Road, is the site of a church and that the property is owned by white property owners in contrast to him, a "Middle Eastern professional." Adeeb pleads that "in 2023-2024," he had "repeatedly complained to City officials that he felt targeted due to his ethnicity," thus "put[ting] Defendants on notice of [Adeeb's] minority status." From 2022 to 2025, Adeeb contends, "virtually all major punitive code enforcement actions in Marina that Plaintiff is aware of were taken against [Adeeb] (a Middle Eastern individual) and possibly other minority landlords, whereas non-minority owners with similar issues were largely left alone." Adeeb alleges that defendant Nava called Adeeb an "absentee landlord" and Adeeb says that Nava "insinuated that 'people like [Plaintiff]' don't follow the rules"—phrasing Adeeb understand as a coded reference to his ethnic background. An internal note by defendant Vega days after Adeeb's records request in January 2025 allegedly

stated, in reference to Adeeb, that "[h]e's playing the race card; we'll give him something to really complain about." Adeeb finally alleged that at a public city council meeting, which "indirectly referenced" Adeeb, "a councilmember allied with [defendant] Huntley remarked about 'outsiders coming in and not respecting our community standards,' which [Adeeb] felt was directed at him as a person of Middle Eastern origin who invested in local property." Dkt. No. 33-2, at 58–59.

These allegations, which must be credited as true for purposes of defendants' Rule 12(b)(6) motion, plausibly allege that Adeeb was targeted on the basis of his Middle Eastern ancestry. Accordingly, he sufficiently pleads an equal protection claim on that basis.

To plead a class-of-one equal protection claim, Dr. Adeeb must "allege facts showing that [he has] been '[1] intentionally [2] treated differently from others similarly situated and that [3] there is no rational basis for the difference in treatment." *SmileDirectClub*, 31 F.4th at 1122–23 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, (2000)) (cleaned up). Whether a class-of-one plaintiff is "similarly situated" to a comparator requires that the comparator be similarly situated "in all material respects." *See id.* at 1123.

Adeeb alleges that he was treated disparately as compared to the property that neighbors his 470 Reservation Road one: 474 Reservation Road. According to Adeeb, 474 Reservation Road "had similar or more severe code violations" than Adeeb's properties. The neighboring property at 474 Reservation Road is used as a church and daycare. The church and daycare, Adeeb alleges, "had comparable or worse code violations" yet no enforcement actions—"no citations, no vacate orders, no fines"—were taken against it. Adeeb alleges that there was "*no rational basis* for the unequal treatment."[3]

Defendants argue that Adeeb "fails to allege that the differences [in code enforcement] were applied intentionally" and that they had a rational basis. But defendants do not explain why Adeeb has not plausibly alleged that the City acted intentionally. *See Olech*, 528 U.S. at 565 ("Olech's complaint can fairly be construed as alleging that the Village intentionally demanded a

---

[3] The Court's conclusion here is based solely on Adeeb's second amended complaint, taking its allegations as true. Further factual development may reveal that 470 Reservation Road and 474 Reservation Road are not, in fact, similarly situated.

33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners."). The City issued its code violations and does not argue that it did so mistakenly, nor that it mistakenly refrained from citing 474 Reservation Road. Though defendants argue that plaintiffs must ultimately show "an intent or purpose to discriminate against the plaintiff based upon membership in a protected class," the Court can infer such intent based on the disparate treatment of Adeeb's 470 Reservation Road property and the nearby 474 Reservation Road property. And, as just discussed, Adeeb sufficiently pleads that the different treatment of his property compared to the neighboring one was without a rational basis because both allegedly had similarly serious code violations.

Defendants' motion to dismiss Adeeb's equal protection claim is therefore denied.

### D. Excessive Fines (Count 5)

Adeeb alleges that defendants violated the Fifth, Eighth, and Ninth Amendments to the U.S. Constitution by imposing excessive fines and enforcement actions amounting to an unconstitutional regulatory taking. Though he pleads violations of three different constitutional amendments, his factual allegations primarily implicate a violation of the Eighth Amendment, and defendants challenge his claim that he was fined excessively only on Eighth Amendment grounds. Therefore, the Court considers Adeeb's factual pleadings alleging that he received a fine excessive to the point of unconstitutionality under the Eighth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that the Fourth Amendment alone applies to all claims involving excessive force during an arrest and that due process does not provide a separate standard for liability).

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Excessive Fines clause applies to municipal fines. *See Pimentel v. City of Los Angeles*, 974 F.3d 917, 922 (9th Cir. 2020). To evaluate whether a fine is excessive under the Eighth Amendment, the Ninth Circuit applies the test from *United States v. Bajakajian*, 524 U.S. 321 (1998). *See also Pimentel*, 974 F.3d at 921. "To determine whether a fine is grossly disproportional to the underlying offense" under that test,

"four factors are considered: (1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Pimentel*, 974 F.3d at 921.

As with Adeeb's prior complaint, Adeeb has not shown that the weight of the four *Bajakajian* factors favors him. Adeeb's amended complaint adds allegations that he was fined approximately $170,500 in total for his violations. Adeeb alleges that such amounts were disproportionate to the violations and that the City reached that amount by unfairly aggregating fines. But these new allegations do not establish that the fine is excessive under *Bajakajian*. First, Adeeb's underlying offense continues to involve violations of the City of Marina's building and safety code at multiple properties, so the underlying property code violations, unlike the parking meter violations in *Pimentel*, are not "minor." *Id.* at 923. The first factor thus favors defendants.

As to the second factor, the underlying offense does not appear to relate to other illegal activities. This factor thus slightly favors Adeeb.

As to the third, it is unclear whether "other penalties may be imposed for the offense." *Id.* at 921. This factor is thus neutral.

The fourth factor, "the extent of the harm caused by the offense," *id.* at 921, is measured as "the monetary harm resulting from the violation," *id.* at 923, as well as "how the violation erodes the government's purposes for proscribing the conduct" *id*. at 923. Adeeb's complaint and attached exhibits detail his purported failures to maintain his properties in compliance with the applicable codes. Such violations of local building codes directly "erode[] the [City's] purposes for proscribing the conduct" because the City has a strong interest in public safety and can be understood to have passed its nuisance statute to address concerns about unsafe, unfit, or unsightly property conditions. *See id*. at 923; Dkt. No. 35-3, Marina Municipal Code § 8.70.050. The relationship between the precise magnitude of the fine and the gravity of the offense also does not, as pleaded, plausibly allege a violation of the Eighth Amendment because governments have "broad authority" to levy fines and can do so to advance deterrence or compliance purposes. *See Pimentel*, 974 F.3d at 924 (quoting *Bajakajian*, 524 U.S. at 336). The fourth factor thus favors the City.

Considering and weighing all four factors, Adeeb has not plausibly pleaded that the City of Marina's enforcement actions violated the Eighth Amendment's Excessive Fines Clause. Accordingly, defendants' motion to dismiss Count 5 is granted.

**E. Civil Conspiracy to Interfere with Civil Rights (Count 6)**

Under 42 U.S.C. §§ 1985(2), (3), victims of conspiracies to obstruct judicial proceedings or to deprive those victims of their rights can sue the conspirators for damages. Here, because Adeeb has stated claims for violations of his procedural due process and equal protection rights and alleges that the defendants conspired to commit those violations, Adeeb plausibly pleads a conspiracy cause of action under 42 U.S.C. § 1985.

**F. Fair Housing Act: Discriminatory Enforcement (Count 7)**

The Fair Housing Act prohibits discriminating "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The Act also makes it illegal "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" their rights under the Act. 42 U.S.C. § 3617.

Defendants argue that Adeeb's claim should be dismissed "on the simple basis that he does not allege that he is either buying or renting a property from Defendants, making 42 U.S.C. § 3604(b) inapplicable on its face." Though courts generally apply the FHA to allegations of discrimination against *tenants* based on their protected status, courts have also applied it to zoning decisions that have a disparate impact on certain types of minority tenants and to an insurers' policy of refusing to insure properties owned by landlords who rent to tenants receiving housing vouchers. *See Avenue 6E Investments, LLC v. City of Yuma*, 818 F.3d 493 (9th Cir. 2016); *Nat'l Fair Housing Alliance v. Travelers Indemnity Co.*, 261 F. Supp. 3d 20, 22, 34 (D.D.C. 2017). In *Avenue 6E Investments*, for example, the Ninth Circuit held that a city can be liable under a disparate impact theory for declining to rezone land that would lead to fewer Hispanic people purchasing homes in an area of Southeast Yuma. *See* 818 F.3d at 509–10.

Adeeb asserts systemic discrimination against Middle Eastern property owners. He alleges that, "[b]etween 2022 and 2025, virtually all major punitive code enforcement actions in Marina

that Plaintiff is aware of were taken against him (a Middle Eastern individual) and possibly other minority owners, whereas non-minority owners with similar issues were largely left alone." Adeeb also alleges, "on information and belief that the City's code enforcement did not comparably fine or vacate any non-Middle-Eastern property owners to the extreme extent it did to Plaintiff." Complaint at 44. Adeeb further alleges that defendants "selectively enforce[ed] housing and building codes against Plaintiff's … tenants' national origin (Middle Eastern)" and that "many of [his tenants] were minorities as well."

Given these allegations, Adeeb plausibly pleads that the City's enforcement of its property code against him has the effect of "discriminat[ing] against [minority tenants] in the terms, conditions, or privileges of sale or rental of a dwelling." 42 U.S.C. § 3604(b). Defendants' motion to dismiss Adeeb's FHA claim is therefore denied.[4]

**II. State Claims**

As with their previous motion to dismiss, defendants argue again that plaintiffs' state law claims should be dismissed for failure to exhaust administrative remedies.[5] Under "well settled" California law, "[i]n general, a party must exhaust administrative remedies before resorting to the courts." *Williams & Fickett v. County of Fresno*, 2 Cal. 5th 1258, 1267–68 (2017) (quoting *Coachella Valley Mosquito & Vector Control Dist. v. Cal. Pub. Emp. Rels. Bd.*, 35 Cal. 4th 1072, 1080 (2005)). "[W]here an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Abelleira v. Dist. Ct. of Appeal*, 17 Cal. 2d 280, 292 (1941). The City of Marina provides for appeals of nuisance determinations in administrative hearings. *See* Marina, Cal., Mun. Code 8.70.100 (2025).

[4] The Supreme Court has identified numerous "safeguards" that protect defendants from unjustified disparate impact liability under the Fair Housing Act. *See Texas Dep't of Housing & Community Affairs v. Inclusive Communities Proj., Inc.*, 576 U.S. 519, 542–43 (2015); *Sw. Fair Housing Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 961–62 (9th Cir. 2021). Further factual development is necessary for the Court to determine whether and how those safeguards might apply here.

[5] Defendants also argue for dismissal of Adeeb's state law claims for failure to comply with the Tort Claims Act. Motion to Dismiss at 4–5. Because the Court concludes again that Adeeb fails to state any claims under state law for failure to exhaust administrative remedies, the Court need not consider this argument.

Adeeb's second amended complaint adds an allegation that he "timely filed a written tort claim with the City of Marina on or about March 15, 2025, describing Defendants' misconduct and the damages suffered …." But he still has not cured the defect in his previous complaint as to his failure to exhaust administrative remedies before suing here.

Adeeb argues that California law recognizes an exception to exhaustion "especially where remedies are inadequate or futile." Because Marina's nuisance ordinance purportedly requires "full payment of abatement costs prior to the appeal hearing of those costs," Adeeb alleges that Marina has created "a structural barrier that plausibly prevents meaningful review for those facing large cost assessments." Adeeb's cited authority, *Coachella Valley*, 35 Cal. 4th 1072, 1080–81, indeed discussed two exceptions to California's exhaustion requirement: futility and where the agency at issue "lacks authority, statutory or otherwise, to resolve the underlying dispute between the parties." 35 Cal. 4th at 1081–82. The Court construes Adeeb as arguing that exhaustion is excused here for futility and a lack of agency authority.

Adeeb has not shown that either exception applies. As to futility, as detailed in the Court's previous order granting defendants' motion to dismiss, futility can excuse exhaustion only if the plaintiff shows that the agency has declared how it will rule on their specific case. *See Adeeb*, 827 F. Supp. 3d at 1213. But Adeeb's only allegation as to futility outside of his opposition brief concerned a different type of futility: that a "pre-payment requirement … blocks Plaintiff's access to appeals." He cites no California caselaw suggesting that requiring a non-indigent defendant to pay fines pending review renders that review futile.

As to lack of administrative authority, "[i]n deciding whether to entertain a claim that an agency lacks jurisdiction before the agency proceedings have run their course, a court considers three factors: the injury or burden that exhaustion will impose, the strength of the legal argument that the agency lacks jurisdiction, and the extent to which administrative expertise may aid in resolving the jurisdictional issue." *Coachella Valley*, 35 Cal. 4th at 1082. Adeeb makes no argument as to any of those factors, and, in any event, they do not clearly favor Adeeb. Therefore, Adeeb has not pleaded that he exhausted his administrative remedies or that he was excused from doing so. Defendants' motion to dismiss Counts 4, 8, 9, 10, and 11 is therefore granted.

**III. Municipal Liability as to the City of Marina**

Defendants move to dismiss Counts 1, 2, 3, and 5 for failing to plead the elements of municipal/*Monell* liability. As the Court dismisses Adeeb's first and fifth causes of action, the only question is whether Adeeb's second and third causes of action against the City, for alleged procedural due process and equal protection violations, are inadequately pleaded.

A plaintiff seeking to sue a municipality under 42 U.S.C. § 1983 must allege that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A plaintiff must show that the municipality's agents caused an injury resulting from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy …." *Id.* "Municipalities may be held liable for officer misconduct in three circumstances: (1) when implementation of its official policies or established customs inflicts the constitutional injury, (2) for acts or omissions that amount to the local government's own official policy, or (3) when the final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Paredes v. City of San José*, 760 F. Supp. 3d 902, 923 (N.D. Cal. 2024) (quoting *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled in part on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)) (cleaned up).

As to Adeeb's second claim, Adeeb has stated a procedural due process claim based on the significant delay in hearing Adeeb's appeal of the City's nuisance order. The City's practice of failing to establish a quorum for its appeals process, coupled with the allegedly retaliatory comments by City Council officials such as that Adeeb is a "problem landlord," support a plausible inference that the City ratified the year-long delay Adeeb experienced. Therefore, Adeeb adequately pleads *Monell* liability as to the alleged violation of his procedural due process rights.

As to Adeeb's third claim, Adeeb has stated an equal protection claim based on his Middle Eastern ancestry because of the alleged comments by defendants Nava and Huntley and because of his class-of-one treatment compared to the treatment of a nearby property. By their very nature,

enforcement and citation actions "implement[] or execute[] a policy statement, ordinance, regulation, or decision officially adopted or promulgated by" the City and its officers. *Monell*, 436 U.S. at 690. Adeeb alleges suspicious timing of "coordinated enforcement" involving "multiple City departments (Fire, Code, Building)" and that defendant Edwards "signed off" on enforcement actions. and thus "made a conscious policy choice to enforce selectively." With these allegations, Adeeb again adequately pleads a ratification theory of *Monell* liability as to the City of Marina.

Adeeb also pleads direct liability as to the individual defendants. For each defendant—Edwards, Nava, Huntley, and Vega—Adeeb has alleged some direct involvement by each. Adeeb alleges that "Defendants Huntley and Edwards issued and executed" the unsafe-to-occupy notice on his 327 Reservation Road property in January 2025. Vega "personally carried out or directed several of the enforcement actions against Plaintiff—conducting inspections, issuing notices/citations, and communicating directly with Plaintiff." And Adeeb alleges that on January 30, 2025, Vega threatened "inspecting Plaintiff's mother's house next … ('back off or we'll go after your family.')." Finally, Edwards "reviewed and electronically signed the" unsafe-to-occupy notice from January 27, 2025. Supervisors such as Edwards can be liable for the actions of their employees in § 1983 suits but not if they had "mere awareness" of a violation. *See id.* at 1206. Instead, a supervisor is liable for their employee's actions only if they actually "participated in or directed the violations[] or knew of the violations … and failed to act to prevent them." *Vazquez v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020) (quoting *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007)) (cleaned up). Edwards allegedly directed the discriminatory enforcement against Adeeb. Thus, Adeeb adequately pleads supervisory liability as to Edwards.

**IV. Qualified Immunity**

Defendants argue that the individual defendants receive qualified immunity for their alleged conduct solely because Adeeb "has failed to establish an underlying constitutional violation." Because Adeeb pleads several underlying constitutional violations, defendants' argument fails.

United States District Court
Northern District of California

## CONCLUSION

After the completion of the briefing, Adeeb filed a supplemental reply memorandum in further opposition to defendants' motion to dismiss plaintiff's second amended complaint. Dkt. No. 39. Civil Local Rule 7-3(d) provides that, "Once a reply is filed, no additional memoranda, papers, or letters may be filed without prior Court approval," subject to limited exceptions. N.D. Cal. L.R. 7-3(d). The Court construes Adeeb's filing as a motion for leave to file a supplemental reply memorandum, as defendants request, Dkt. No. 40, and denies Adeeb's motion.

For the reasons stated above, the Court grants defendants' motion to dismiss Adeeb's First Amendment and Excessive Fines claims without further leave to amend and with prejudice. The Court dismisses his state law claims without further leave to amend but without prejudice. The Court denies defendants' motion to dismiss Adeeb's procedural due process, equal protection, civil conspiracy, and FHA claims.

**IT IS SO ORDERED.**

Dated: August 10, 2026

P. Casey Pitts
United States District Judge